UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF BELMONT,<br><br>    Applicant,<br><br>v.<br><br>JANE DOE and COMMONWEALTH OF MASSACHUSETTS CIVIL SERVICE COMMISSION,<br><br>    Interested Parties. | DOCKET NO.<br><br>TOWN OF BELMONT'S APPLICATION FOR AUTHORIZATION TO USE MEDICAL RECORD AT ADMINISTRATIVE HEARING PURSUANT TO 42 U.S.C. § 290dd-2(b)(2)(C) |

## I. **INTRODUCTION**

The Town of Belmont ("Town") hereby requests that this honorable Court issue an Order, pursuant to 42 USC § 290dd-2(b)(2)(C), permitting the Town to introduce Jane Doe's ("Doe") medical record into evidence at a Civil Service Commission ("Commission") hearing in which Doe is appealing the Town's decision to terminate her from her employment as a Police Officer for the Town of Belmont Police Department. The Town's core reason for terminating Doe's employment was because she was untruthful about her past history of substance use on her application for employment. Exhibit 1 – Employment Application.

Specifically, the Town seeks to introduce into evidence one medical record containing a note from one of Doe's health care providers dated March 9, 2016, which reported a history of substance use and abuse from 2011 ("the medical record").[1] The Town is not seeking to introduce the substance of the medical treatment received by Doe contained in the medical

---

[1] The Town has not attached the March 9, 2016 Medical Record to the Town's Application. The Town will provide the Court a copy of the Medical Record to be reviewed by the Court in camera at the Court's request or file electronically a redacted copy of the Medical Record at the Court's request.

1

record. Rather, the Town is seeking to introduce the medical record for the limited purpose of establishing that Doe lied on her application for employment with the Department.

For the reasons set forth below, the Town respectfully requests that the requested Order be issued.

## II.  STATEMENT OF FACTS

1. On January 3, 2020, James MacIsaac ("Chief") was appointed as Chief of Police for the Town of Belmont.

2. Upon appointment, he began a review of various personnel files which included a review of Doe's medical file related to her 2016 injury leave pursuant to G.L. c. 41, § 111F ("111F leave"). Upon his review of the file, Chief MacIsaac saw the 2016 medical record which reported that Doe had a substance use (cocaine) dependency for which she sought treatment in 2011.

3. The medical record was obtained by the Town pursuant to a release executed by Doe for the release of her medical records in relation to her 2016 on-duty injury, which occurred while on duty in February 2016. Exhibit 2 – Executed Release.

4. Following his review of the medical note, Chief MacIsaac retrieved Doe's application for employment, which she submitted to the Department in 2013. The first page of the application provided that "[f]ailure to answer any and all questions truthfully, accurately, or completely shall result in the applicant's disqualification, or if discovered after an individual is hired, termination from employment." Exhibit 1.

5. Doe was asked the following question on her application:

"Have you ever Used or Possessed any illegal drugs/narcotics? Exhibit 1.

6. Doe answered "No" to the question. Exhibit 1.

7. Based on the information reviewed, the Chief placed Doe on administrative leave on July 27, 2020, and conducted an investigation. Exhibit 3- Letter dated July 27, 2020.

8. On August 27, 2020, following the completion of the investigation, the Chief notified Doe of his recommendation that she be terminated from her employment with the Town. Exhibit 4 – Letter dated August 27, 2020.

9. At that same time, on August 28, 2020, Chief MacIsaac received a letter from the Middlesex District Attorney's Office advising that in all future cases involving Doe, the Commonwealth would be issuing a notice advising that Doe had been the subject of an investigation that concluded that she was untruthful on her employment application. Exhibit 5 – Letter dated August 28, 2020. ,

10. On October 14, 2020, a hearing was held via zoom before a Hearing Officer designated by Chief MacIsaac to determine whether there was just cause to terminate Jane Doe's employment. At the hearing, Doe's Counsel objected to the introduction of the medical record. The Hearing Officer requested that the parties brief the issue and submit arguments to him for purposes of making a decision.

11. By Decision dated December 11, 2020, the Hearing Officer allowed the medical record to be introduced finding that it was lawfully obtained by the Town pursuant to a release signed by Doe for her medical records in relation to her 111F leave. . He further found just cause for the Chief's intended personnel action and recommended Doe's termination from employment. Exhibit 6 – Decision dated December 11, 2020.

12. The Town subsequently terminated Jane Doe's employment on December 21, 2020. Exhibit 7 – Notice of Termination dated December 15, 2020.

13. Doe appealed the termination of her employment to the Civil Service Commission pursuant to G.L. c. 31. § 43.[2]

14. At a Pre-Hearing Conference held by the Commission on February 16, 2021, at which Doe appeared *pro se*, the parties presented their anticipated cases to the Commissioner presiding at the Conference, Christopher C. Bowman, Chair. At that time the medical record, and what it represented, was discussed. Mr. Bowman scheduled a further Status Conference to provide Doe with the opportunity to obtain counsel for the full hearing, which the Commission scheduled for May 18, 2021. Exhibit 8 - Procedural Order dated February 18, 2021.-

15. The parties appeared for the Status Conference on April 5, 2021. At that time Doe had yet to retain counsel. The parties discussed their respective witness lists and the documents each anticipated to offer during the full hearing. As Doe continued to represent that she would have counsel by the date of the hearing, the Commission scheduled a further Status Conference to be held on Tuesday, May 4, 2021.

16. At the May 4, Status Conference, which was attended by the Town's Labor Counsel, Attorney Hammond, Mr. Bowman, and Commission Counsel, Robert Quinan, Esq., Attorney Hammond objected to the Town's use of the subject record on various grounds, and opposed the Town's request of the Commission to issue a hearing subpoena to the health care provider who authored the 2016 medical record, along with other objections. The parties also discussed how the 2016 medical record

---

[2] Doe's bargaining union also filed a grievance on her behalf but the grievance was dropped following Doe's pursuit of the appeal before the Commission.

       included notes from a 2011 medical visit that occurred prior to Doe's employment with the Department.[3]

17. Following the May 4, Status Conference, the parties received an e-mail from Attorney Quinan wherein he directed the parties to submit briefs as to its applicability of 42 U.S.C., § 290dd 2 to Doe's appeal and the subject medical record. The parties subsequently submitted briefs and appeared for a further Status Conference on Tuesday, May 18, 2021, before Commissioner Paul M. Stein, who had been assigned as the Commissioner to preside at the full evidentiary hearing. Exhibit 9 – Email from Quinan dated May 7, 2021.

    Following the May 18, 2021 Status Conference, Commissioner Stein issued a Procedural Order which provided, in relevant part, that "[i]n the absence of a determination by a court of competent jurisdiction that there is good cause to allow the [medical record] to be introduced, I find that I would be obliged to exclude that evidence at this time on the grounds that [Doe] did not provide an appropriate authorization compliant with the requirements of 42 USC § 290dd-2 that would permit the introduction of that evidence without a court order." Exhibit10 – Procedural Order issued May 18, 2021.

---

[3] It was explained that officers who are placed on injured on duty leave in Belmont are allowed to receive recuperative treatment and care from their private health care providers, and the bills for those services are sent to the Town's third party administrator, Meditrol, for payment. Doe received treatment from her family health care provider for her 2016 injury, and the subject record included information from a visit in 2011, with the same provider, which pre-dated her employment,

**III.     STATEMENT OF REASONS**

GOOD CAUSE EXISTS FOR THE ISSUANCE OF THE REQUESTED ORDER

Pursuant to 42 USC § 290dd-2(b)(2), "Whether or not the patient, with respect to whom any given record referred to in subsection (a) is maintained, gives written consent, the content of such record may be disclosed as follows:

> (C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services."

a.     Disclosure Is In The Public's Interest

The Supreme Judicial Court has held that police officers must obey the law and be truthful in all of their official dealings, or they may face termination. City of Boston v. Boston Police Patrolmen's Association, 443 Mass. 813, 821 (2005) (Emphasis supplied). Massachusetts Courts have consistently held that police officers are held to a higher standard of conduct than other employees and citizens. See Attorney General v. McHatton, 428 Mass. 790, 793 (1999); McIsaac v. Civil Service Commission, 38 Mass.App.Ct. 473, 477 (1995); see also Boston Police Department v. Collins, 48 Mass.App.Ct 408, 413, cert. denied 726 N.E.2d 413 (2000) (Court noted the "**high standard** of conduct required of police officers and the need . . .to respect that standard"). The termination of police officers without any prior discipline has been upheld when police officers have engaged in conduct that failed to meet this high standard and represented conduct unbecoming an officer. See e.g. McIsaac, 39 Mass.App.Ct at 476 (emphasis supplied); see also Commissioners of Civil Service v. Municipal Court of Brighton Dist., 369 Mass. 166 (1975). Furthermore, in recognizing this high standard of conduct, Massachusetts Courts have consistently upheld the discharge of police officers, even where the inappropriate conduct

6

occurred while off duty.  See  Police Commissioner of Boston v. Civil Service Commission, 39 Mass.App.Ct. 594, 601 (1996); McIsaac, 38 Mass.App.Ct. at 475-476; Municipal Court of Brighton Dist., 369 Mass. at 170-171.

"An officer of the law carries the burden of being expected to comport himself or herself in an exemplary fashion." McIsaac, 39 Mass.App.Ct at 475. Conduct that meets the common understanding of  "improper" or "intemperate" is surely an embarrassment to a police force and, therefore,  is conduct unbecoming an officer.  Id.  The SJC, in reviewing Appeals Court decisions on this issue, stated in McHatton that:

> "These cases teach a simple lesson.  Police Officers must comport themselves in accordance with the laws that they are sworn to enforce and **behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel.**  They are required to do more than refrain from indictable conduct.  Police officers are not drafted into public service; rather they compete for their positions.  **In accepting employment by the public, they implicitly agree that they will not engage in conduct that calls into question their ability and fitness to perform their official responsibilities**."

McHatton, 428 Mass. at 793-794 (citing Police Commissioner of Boston v. Civil Service Commission, 22 Mass.App.Ct. 364, 371 (1986)).

Honesty is an essential requirement of all law enforcement officials:

> It is often said that an officer's reputation is his or her most valuable possession.  The need for ethics and integrity in law enforcement has never been greater.  Police officers that lie damage more than their own reputation.  They hurt the department's ability to engender and maintain the trust and cooperation of the community.  The whole concept of policing in a democratic society depends on the integrity of those whom we entrust with the power to enforce laws, search our homes, place us in custody, and, in the most serious cases, take our lives without any formal process or trial.  With such awesome authority comes a very high level of responsibility.  If the public lacks confidence in the agency's ability and commitment to investigate and prosecute officer misconduct, there is little hope for successful partnerships and problem solving. . . "When officers lie, we run the risk that our

>system of justice will be compromised. If we come to tolerate or even expect this of the police, the very fiber of our nation of laws is weakened. The catastrophic long-term consequences make any short-term satisfaction hardly worth it. The need for honesty among law enforcement officers is widely recognized by the courts. In fact, **an officer that is found guilty and disciplined for dishonesty may be such a liability that discharge is appropriate even in the absence of traditional progressive discipline or rehabilitation efforts** (emphasis supplied).

Mass. Criminal Justice Training Council: The Chief's Guide To Internal Affairs, p. 13-1.

The United States Supreme Court has held that public employees must tell the truth during departmental investigations of employee misconduct. LaChance v. Erickson, 522 U.S. 262, 265 (1998) (citing Bryson v. United States, 396 U.S. 64, 72 (1996)) ("Our legal system provides methods for challenging the Government's right to ask questions--lying is not one of them"). This is an especially egregious offense for a police officer for the additional reason that prosecutors are required to supply defendants or their counsel with all information about an officer's dishonesty. This requirement has been clearly established for some time in both federal and state criminal courts. Under a line of cases culminating in the 1995 Supreme Court decision of Kyles v. Whitley, 514 U.S. 419 (1995), a prosecutor has an obligation to personally review department discipline or personnel files and disclose to defense counsel any record of an officer's conviction for dishonesty. Id. at 439. This would have the effect of making such an officer "damaged goods." This lack of credibility could also jeopardize other officers in civil or disciplinary cases where they must rely on said officer for corroboration.

The cases set out above lay out the well-established, dominant, and well-defined public policy that holds members of law enforcement to a high standard of honesty and integrity. Officers that cannot live up to that standard disqualify themselves from public service. The public has a material and vested interest in seeing that law enforcement agencies at all levels

employ only the most honest and truthful individuals to fill their respective ranks. That interest would be cast aside, fully and completely, in the absence of the issuance of an order from this Court that permits the Town to offer the medical record to the Commission to support the Town's decision to terminate Doe's employment for dishonesty.

The public would be severely prejudiced if the Town is not able to introduce the medical record into evidence at the Commission hearing. The inability to use the medical record to establish that Doe lied on her application, would completely undermine the Town's case and ability to establish just cause for the personnel action it took against her. As a result, the Town would likely have to return Doe to employment as a police officer, despite knowing that she could not meet the truthfulness standard expected of her. She would not be able to faithfully perform all of the essential functions of her job as a police officer, including testifying in criminal proceedings for actions undertaken in the performance of her duty, as her integrity and honesty as a police officer would be contested for the duration of her employment as a law enforcement officer.

Finally, it is not as if the Town obtained the medical record by trick or deceptively. The public's interest is further strengthened by the fact that the Town received the medical record lawfully and as permitted by Doe herself following her injury and the execution of the medical release for medical files related to the 2016 injury.

      b.      <u>The Public's Interest Far Outweigh Doe's Interests</u>

Doe's interest in seeing that the medical record be kept from the Commission is wholly self-serving. It does not serve the public's interests and would only serve as a benefit to her and no one else. Doe should not be able to hide such an egregious, intentional, and willful

misrepresentation. The Court should not permit her to hide behind the statute by seeking to pretend that the prior substance use never occurred.

Moreover, pursuant to the statute, to the extent that Doe believes the issuance of an order would infringe upon her privacy rights, the Court can impose appropriate safeguards upon the Commission to protect Doe's subjective privacy interests upon granting the requested order, while preserving the public's interests. See 42 USC § 290dd-2(b)(2)(C). The Town is not seeking to use the substance of the actual medical record as a basis for the personnel action. Rather, the Town is simply using the fact that she sought treatment to establish the misrepresentation in her application.

## IV. CONCLUSION

WHEREFORE, the Town respectfully requests that this honorable Court grant the Town's application pursuant to 42 U.S.C. § 290dd-2(b)(2)(C) to be able to introduce into evidence at the Commission's hearing Doe's March 9, 2016 medical record.

TOWN OF BELMONT,

By its attorneys,

*/s/ Deborah J. Ecker*
Brian M. Maser (BBO# 655667)
Deborah I. Ecker (BBO# 554623)
KP Law, P.C.
101 Arch Street, 12th Floor
Boston, MA 02110
(617) 556-0007
bmaser@k-plaw.com
decker@k-plaw.com

Date: June 8, 2021
766681v2/02600/0103

## CERTIFICATE OF SERVICE

I, Deborah I. Ecker certify that the above document will be served by first-class mail upon any party or counsel of record who is not a registered participant of the Court's ECF system, upon notification by the Court of those individuals who will not be served electronically.

Date:  June 8, 2021                                    _Deborah J Ecker_