# **<u>EXHIBIT 6</u>**

**WILLIAM D. COX, JR.**
ATTORNEY AT LAW
145 SOUTH MAIN STREET
BRADFORD, MASSACHUSETTS 01835
(978) 373-2360
Fax: (978) 891-5424
EMAIL: BILLCOXLAW@AOL.COM

**TO:** **Police Chief James MacIsaac**
**FROM:** **Wiliam D. Cox, Jr., Hearing Officer**
**RE:** **Belmont Police Department - Disciplinary Action**
▮▮▮▮▮▮▮▮▮▮▮▮▮

**Date:** **December 11, 2020**

**Hearing Officer's Decision in the Matter of ▮▮▮▮▮▮▮▮▮▮▮▮**
**Pursuant to M.G.L., Chapter 31, Section 41**

## Introduction

On October 14, 2020 a hearing was held by Zoom Conference before the undersigned hearing officer, designated by the appointing authority, City of Belmont, Police Chief James MacIsaac, pursuant to Massachusetts General Laws, Chapter 31, section 41.

Having received no written request for a public hearing, the matter was declared private. At issue is whether there was just cause for the termination of ▮▮▮▮▮▮▮▮▮▮▮▮ for her alleged misconduct in providing untruthful responses to the Town on her 2013 Employment Application, and, whether her untruthfulness resulted in her incompetence and inability to perform her sworn police duties.

By letter dated July 27, 2020 (Town Ex 3) Chief of Police James MacIsaac notified ▮▮▮▮▮▮▮▮▮▮ that he was placing her on paid administrative leave while the Department conducted an investigation into allegations which could affect her fitness for duty and ability to serve as a police officer. On August 27, 2020 (Town Ex 4) ▮▮▮▮▮▮▮▮▮ was advised of the results of the Department's Professional Standards Investigation and the recommendation for termination in a letter from Chief MacIsaac. Prior to the hearing ▮▮▮▮▮▮▮▮▮ was provided with a detailed account of the investigation, the review and conclusion reached by the Middlesex District Attorney's Office as to application of the "Brady Rule", and copies of Massachusetts General Laws, Chapter 31, §§ 41-45, 62 and 62A as required by statute.

▮▮▮▮▮▮▮▮▮▮ requested a hearing to determine whether there was just cause for the recommendation for her termination.

David M. Connelly, Esq. of Morgan, Brown & Joy, LLP appeared on behalf of the Town of Belmont, Belmont Police Department and the Chief of Police. James F. Lamond, Esq. of McDonald Lamond Canzoneri appeared on behalf of ▮▮▮▮▮▮▮▮▮▮.

Page 2 of 7 - Hearing Officer's Decision in the Matter of ▮▮▮▮▮▮▮▮▮

    Both parties made opening statements. Testimony was taken from Chief MacIsaac, who was examined and cross-examined by counsel. ▮▮▮▮▮▮▮ did not testify, but rather answered the charges made against her through her counsel, Attorney Lamond. The parties did not make closing statements and were requested to brief two issues - namely, can the hearing officer draw an adverse inference against ▮▮▮▮▮▮▮ for her failure to testify, and, to what degree was ▮▮▮▮▮▮▮ medical information available for use in these proceedings.

In addition to the testimony taken, the record before me consists of the following documents:

Exhibit 1: Internal Investigation Report dated August 24, 2020 from James MacIsaac, Chief of Police, Pages 1 - 10, which included the following documents:
- #1, Page 11, Medical Information Release Authorization signed by ▮▮▮▮▮▮▮ and dated 8/24/14;
- #2, Page 12, Partial Medical Record from ▮▮▮▮▮▮▮▮▮▮ for ▮▮▮▮▮▮▮ and dated 8/27/14;
- #3, Page 13, Notice to Police Officer Candidates regarding smoking tobacco products signed by ▮▮▮▮▮▮▮ and dated 4/3/13;
- #4, Page 14, Medical Information Release Authorization signed by ▮▮▮▮▮▮▮ and dated 2/5/16;
- #5, Pages 15-17, Medical Record from ▮▮▮▮▮▮▮▮▮▮ for ▮▮▮▮▮▮▮ and dated 3/3/16;
- #6, Pages 18-24, Medical Record from ▮▮▮▮▮▮▮▮▮▮ for ▮▮▮▮▮▮▮ and dated 3/15/16;
- #7, Pages 25-47, Application for Employment of ▮▮▮▮▮▮▮ signed on 3/29/13; and,
- #8, Page 48, Hiring interview notes of Former Police Chief Richard McLaughlin for ▮▮▮▮▮▮▮.

Exhibit 2: August 28, 2020 letter from ▮▮▮▮▮▮▮▮▮, Assistant District Attorney to Police Chief James MacIsaac.

Exhibit 3: July 27, 2020 letter from Police Chief James MacIsaac to ▮▮▮▮▮▮▮▮▮.

Exhibit 4: August 27, 2020 letter from Police Chief James MacIsaac to ▮▮▮▮▮▮▮▮▮.

Exhibit 5: October 1, 2020 letter from Police Chief James MacIsaac to ▮▮▮▮▮▮▮▮▮.

    Based on the factual record, and for the reasons set forth below, I find that just cause exists to terminate ▮▮▮▮▮▮▮ employment with the Town of Belmont's Police Department for her untruthfulness, as well as her resulting inability to fully perform her sworn police duties.

Page 3 of 7 - Hearing Officer's Decision in the Matter of ▮▮▮▮▮▮▮▮▮▮

**Facts**

The testimony and documents entered into evidence in this case establish the following facts:

James MacIsaac was appointed as Chief of Police on January 3, 2020. Prior to his appointment as Chief, he served as the Assistant Chief for 7.5 years, as well as several other positions in his 21 years with the Belmont Police Department. Upon appointment the Chief undertook a review of various personnel and operational records, which included the medical records of ▮▮▮▮▮▮▮▮ related to her ongoing injury leave pursuant to MGL c. 41, s. 111F. In the course of his review on or about June 24, 2020 he noticed several statements contained in the medical records which were a cause for concern.

Several issues identified are not the subject of this disciplinary action - namely, whether ▮▮▮▮▮▮▮▮ was smoking tobacco products while employed as a police officer, whether she made a truthful representation to a medical provider as to the availability of light duty available to her while out on 111F leave, and whether she was misleading healthcare providers regarding the death of her boyfriend from a heroin overdose. They do, however, bear on the Officer's overall truthfulness and credibility which is the crux of this matter.

The primary focus of the Chief's investigation was information contained within the medical records which contradicted ▮▮▮▮▮▮▮▮ answers to three questions which she was required to respond to fully and truthfully on her employment application.

▮▮▮▮▮▮▮▮ was hired as a full-time Belmont Police Officer in the Spring of 2013. In the course of the hiring process applicants are provided with an Employment Application which they are required to complete. The Application informs applicants that "Failure to answer any and all questions truthfully, accurately, or completely shall result in the applicant's disqualification, or if discovered after an individual is hired, termination from employment". Applicant ▮▮▮▮ admitted that she had read and understood the instructions by way of her signing an acknowledgement contained in the application.

On page 7 of the Employment Application applicant ▮▮▮▮ answered the following three questions in the negative:

- Have you ever Used or Possessed any illegal drugs/narcotics?

- Have you ever used a prescription drug without a prescription?

- Have you ever been in an accident while under the influence of alcohol?

After ▮▮▮▮ completed her application, she was given an oral interview at which she was provided with another opportunity to provide information which would have corrected her false answers on the Employment Application. Specifically, she was asked "Is there anything

Page 4 of 7 - Hearing Officer's Decision in the Matter of ▓▓▓▓▓▓

that you feel we should know about you...or anything else that you feel would be relevant to your being appointed as a police officer for the Town of Belmont?" The Chief stated that often times candidates would use this opportunity to disclose that they may have tried or sampled recreational drugs. ▓▓▓▓ stated during her ineterview that she was happy with all of her responses. (See Exhibit 1, #8)

The medical records contained in ▓▓▓▓▓▓ file in relation to the Officer's 111F claim included properly executed medical information release authorizations from the Officer. These releases, dated August 24, 2014 and February 5, 2016, allowed the Department to obtain the ▓▓▓▓▓▓ medical records.

Document #6 of Exhibit 1 is a report from ▓▓▓▓▓▓, LICSW of HVMA's Pain Medicine Department regarding treatment of ▓▓▓▓▓▓ dated 3/15/16. The report provides a diagnosis of ▓▓▓▓▓▓ as having a "Cocaine dependance in remission". The report notes that ▓▓▓▓▓▓ "... is found to be somewhat guarded & irritable throughout assessment, and does not appear to be a reliable historian based on my review of her previous records." The report goes on to state "Pt denies any personal or family hx of substance abuse, however, her record indicates otherwise."

Under the section entitled "PSYCHIATRIC & SUBSTANCE ABUSE HISTORY OF PATIENT" the report incorporates notes from a 8/17/11 encounter with ▓▓▓▓▓▓, LICSW under the subsection "Alcohol/Substance Use". This would have been about 1 ½ years prior to her application for employment with the Belmont Police Department. ▓▓▓▓▓▓ states that ▓▓▓▓▓▓ had, at that time, been using cocaine for 4 years. That within the last month her use had become a crisis as she has spent $3,000 on cocaine and using 2gm per day over the past month. When she was a senior in high school her usage has been as much as 3gm per day or the equivalent of an 8 ball. As a result of her parents intervention she sought treatment. In addition, she began drinking to excess in high school when she would drink as much as a quart of vodka per night and for a 2 month period used a combination of Adderall and Vicodin and then switched to cocaine

Under the subsection entitled "DUI/OUI" further notes from 8/17/11 encounter with ▓▓▓▓▓▓, LICSW were also incorporated which detailed a recent car accident. ▓▓▓▓▓▓ reported she had 3 beers at a bar, that her judgment became impaired and she drove home alone. She diverted her attention to her cell phone and drove her uncle's car into a telephone pole totalling the car and demolishing a great deal of the telephone pole. Finally, under the subsection entitled "Mental Illness" ▓▓▓▓▓▓ noted a history of substance abuse.

Chief MacIsaac attempted to interview ▓▓▓▓▓▓ about the information he had uncovered. ▓▓▓▓▓▓ was represented by counsel during the interview. After initial questioning regarding smoking while employed, ▓▓▓▓▓▓, through her attorney, exercised her Carney rights and declined to answer any further questions from the Chief.

Page 5 of 7 - Hearing Officer's Decision in the Matter of ▇▇▇▇▇▇▇▇

In the 7+ years with the Belmont Police Department, ▇▇▇▇▇▇▇ has been suspended on four separate occasions: 2/5/15 for falling asleep on duty (not being able to locate for over 40 minutes); 1/12/17 for failing to show up for work; 7/17/18 for failing to show up for work; and, 3/19/19 for causing a police response to her location, lying about her name and location when speaking with the Watertown Emergency Dispatch, demonstrating a clear intent to drive her car while intoxicated and destruction of property.

Chief MacIsaac spoke with former Police Chief Richard McLaughlin, who was Police Chief at all times relevant prior to Chief MacIsaac. Chief McLaughlin advised him that he was not aware of any of the information contained in ▇▇▇▇▇▇▇ medical records. In both his written report and his testimony Chief MacIsaac stated that ▇▇▇▇▇▇▇ would not have been hired had the medical record information been known to the Department at the time.

As a result of the information uncovered, Chief MacIsaac notified ▇▇▇▇▇▇▇ of the Middlesex District Attorney's Office. ADA Charles advised Chief MacIsaac that due to ▇▇▇▇▇▇▇ untruthful responses on her employment application the District Attorney's office would now be required to provide notice in all criminal matters in which the Officer is a potential witness that she was found to be untruthful on her employment application. (See Exhibit 2). The Chief testified that an essential element of being a police officer is the ability to effectively provide testimony in court.

▇▇▇▇▇▇▇ choose not to provide direct testimony during this hearing, however, through her attorney did issue a blanket denial of the Chief's allegations.

**Conclusion**

Although provided both by the Department and the G.L. c. 31 hearing process with ample opportunity to rebut the findings of the Chief's investigation or provide a mitigating or contrary explanation or evidence, ▇▇▇▇▇▇▇ chose not to do so. While ▇▇▇▇▇▇▇ has every right not to provide such testimony and rely on her Carney rights, as well as those provided by G.L. c. 31, s.41, the hearing officer is not prohibited from drawing an adverse inference regarding her failure to provide testimony, and I do so draw such an adverse inference in this case.

The mere blanket denial of counsel provides the Hearing Officer with no evidence of any substance upon which he could reach any conclusion other than just cause has been established for the termination of ▇▇▇▇▇▇▇ employment with the Belmont Police Department.

I find that Chief MacIsaac has established just cause for termination of ▇▇▇▇▇▇▇ employment. ▇▇▇▇▇▇▇ was not truthful in answering the three questions she was required to do so at the time she filed her Employment Application regarding her prior drug use and her being involved in an accident while under the influence of alcohol.

Page 6 of 7 - Hearing Officer's Decision in the Matter of ▮▮▮▮▮▮▮▮▮▮

     The evidence clearly demonstrates that ▮▮▮▮▮▮▮▮ failed to disclose her significant cocaine addiction, her recreational use of prescription drugs without having a prescription and her impaired driving which resulted in a serious automobile accident causing appreciable damage, all as she was required to do on her Employment Application.  It is near to impossible to fathom that ▮▮▮▮▮▮▮▮ was not purposely lying on her employment application when she did so.  As Chief MacIsaac noted in his report, ▮▮▮▮▮▮▮▮ drug use was not merely recreational in nature, but excessive to the point where medical intervention was required.  A significant history of drug use and a serious automobile accident are not easily forgotten. The only conclusion that can be drawn is that ▮▮▮▮▮▮▮▮ knew she was being intentionally untruthful and that she did so in order to be accepted for employment.

The Application provided ample notice to ▮▮▮▮▮▮▮▮, which she acknowledged, that if she choose to provide false or incomplete responses that she could be terminated from employment. Her reckless disregard in so doing has permanently and totally eliminated her ability to be a fully functional and effective police officer.  The core of any officer's ability to function effectively is their ability to be truthful.  While her record for being untruthful does not preclude her from being called as a witness and being examined and cross-examined on her statements and reports, the District Attorney's office is now required by the Massachusetts Rules of Criminal Procedure (the "Brady Rule") and Rules of Professional Conduct to attach a notice in all pending and future cases in which ▮▮▮▮▮▮▮▮ is a potential witness disclosing that she was untruthful on her employment application.  It is hard to see how the Officer's dishonesty is anything but a serious handicap to her ability to perform and to aid in the Department's mission.

▮▮▮▮▮▮▮▮ counsel has raised an issue as to the availability for use in this matter of the medical records.  Specifically, he argues that the Chief is relying on "private medical information" that the Town is not lawfully authorized to possess.  This argument is not sustainable for several reasons.  First, the Town lawfully obtained the medical records as ▮▮▮▮▮▮▮▮ employer and her claim for injured on duty benefits pursuant to G.L. c. 41, s. 111F. The evidence includes two medical authorizations signed by ▮▮▮▮▮▮▮▮ for these records. There has been no evidence which would suggest that she did not knowingly and voluntarily provide the authorizations.  Secondly, the information which the Chief finds most compelling, and ▮▮▮▮▮▮▮▮ counsel finds most objectionable, is completely relevant to the treatment ▮▮▮▮▮▮▮▮ was receiving at the time.  This is not a case of an errant medical note inappropriately included in a report.  The issue at hand was the management of ▮▮▮▮▮▮▮▮ pain resulting from her injury.  The visit which generated the report was initiated by ▮▮▮▮▮▮▮▮ because she felt her pain/injury was not being properly addressed. In the course of evaluating her the provider reviewed and included relevant portions of her prior medical history. It is difficult to understand how her prior history would not be relevant in this situation. Lastly, I agree and credit counsel for the Chief's argument that the HIPPA regulations cited by ▮▮▮▮▮▮▮▮ counsel do not apply in this case.  The HIPPA regulations cover the release of certain medical information by "covered entities" without proper authorization.  The Town of Belmont, as an employer, is not a covered entity and the regulations cited by ▮▮▮▮▮▮ counsel are not applicable in this situation. (See 45 CFR §160.103.)

0137

Page 6 of 7 - Hearing Officer's Decision in the Matter of ▮

▮ conduct in and of itself is more than ample just cause to terminate her employment.  When taken together with her four suspensions, one of which also involved dishonesty, in the course of a 7+ year career, just cause is indisputable.

Based on the facts and evidence cited herein, I recommend the termination of ▮ ▮ as a Police Officer for the Town of Belmont for her untruthfulness, as well as her resulting inability to fully perform her sworn police duties.

Respectfully Submitted,

*William D. Cox, Jr.*
_____
William D. Cox, Jr.